**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

|  |  |  |
|---|---|---|
| JEFFERY R. WERNER, | : | **CIVIL ACTION NO.** |
| and INCREDIBLE FEATURES, INC. | : | **1: 18-CV-6106** |
|  | : |  |
| *Plaintiffs,* | : |  |
|  | : |  |
| v. | : |  |
|  | : | **JURY TRIAL DEMANDED** |
| EPOCH TIMES, INC., | : |  |
| EPOCH TIMES INTERNATIONAL, INC., | : |  |
| and NEW TANG DYNASTY | : |  |
| TELEVISION, INC. | : |  |
|  | : |  |
| *Defendants.* | : |  |
|  | : |  |

**COMPLAINT FOR COPYRIGHT INFRINGEMENT**

Plaintiffs, Jeffery R. Werner ("Mr. Werner") and Incredible Features, Inc. ("Incredible Features"), by and through his undersigned attorneys, hereby prays to this honorable Court for relief based on the following:

**ADDRESSES**

1.     The address of each named party is as follows: JEFFERY R. WERNER, 4910 1/4 McConnell Ave., Los Angeles, CA 90066; INCREDIBLE FEATURES, INC., 4910 ¼ McConnell Ave., Los Angeles, CA 90066; EPOCH TIMES, INC., 229 West 28th Street, 6th Floor, New York, NY 10001, EPOCH TIMES INTERNATIONAL, INC., 229 West 28th Street, 6th Floor, New York, NY 10001, and NEW TANG DYNASTY TELEVISION, INC., 229 West 28th St, 7th Floor, New York, NY 10001.

**NATURE OF THE ACTION**

2.     Mr. Werner and Incredible Features bring this complaint for direct, contributory, and vicarious copyright infringement against the defendants under the copyright laws of the

1

United States, 17 U.S.C. § 101, *et seq.*, requesting actual or statutory damages stemming from the defendant's for-profit, unauthorized exploitation of Mr. Werner's copyrighted photographic and video images.

## JURISDICTION AND VENUE

3.     This court has subject matter jurisdiction over the copyright infringement claim, with jurisdiction vested in this Court pursuant to 28 U.S.C. § 1331 (federal question jurisdiction) and 28 U.S.C. § 1338(a) (acts of Congress relating to copyrights).

4.     This Court has general personal jurisdiction over the defendant because it is located and present and regularly doing business in Manhattan, New York City.

5.     Venue in this judicial district is proper under 28 U.S.C. § 1400(a) (venue in copyright actions) in that Epoch Times, Inc., Epoch Times International, Inc., and New Tang Dynasty, Inc., may be found in this District.  In addition, venue is proper under 28 U.S.C. § 1391(b)(1) (defendants' residence) and 28 U.S.C. § 1391(b)(2)  (where actions occurred).

## PARTIES

6.     Plaintiff, Mr. Werner, is an individual residing in Los Angeles, California.  He is the owner of the copyrights to some of the photographs that are the subject of this action.

7.     Plaintiff, Incredible Features, Inc., is a photographic features syndicator located in Los Angeles, California.  It is owned by Mr. Werner and it licenses and owns some of the copyrights of the images made by Mr. Werner and others.

8.     Defendant, Epoch Times, Inc. ("Epoch Times") is a New York corporation that, on information and belief, is a publisher of *The Epoch Times* print and on-line newspaper ("*The Epoch Times*").

9.     Defendant, Epoch Times International, Inc. is a New York corporation that, on

information and belief, is a publisher of the Vietnamese language website Daikynguyenvn.com

("DKN.tv").  The "Terms of Service" on the Daikynguyenvn.com website state that it is a

subsidiary of Epoch Times International Inc. which, it states, is a New York based company that

owns and operates the site.

10.     Defendant, New Tang Dynasty Television, Inc., is a New York corporation that,

on information and belief, is the broadcaster of the NTD.tv entertainment and television station

and is also the publisher of its website ("NTD.tv").

<u>**FACTS**</u>

**Mr. Werner Is A Professional Photographer**

11.     Mr. Werner has over 35 years of experience as a professional photographer.  His

work has appeared in magazines world-wide as covers, features, and editorial coverage in

publications such as *Life, Time, Newsweek, People, Marie Claire, FHM, Smithsonian, Playboy,*

*Maxim, In Touch, Daily Mail, Penthouse, Psychology Today, Stern, Country Weekly*, and *Page*

*Six Sunday Magazine* (*NY Post*) and many others. He has had over 100 double-page spreads in

the National Enquirer.  His photographs of amazing stunts, performed with motorcycles,

airplanes, trains, and other vehicles, were featured on such television shows as: *That's*

*Incredible!, The World's Greatest Stunts, Stuntmasters, Guinness World Record Spectaculars,*

*Ripley's Believe It Or Not*, and *I Dare You*.  Werner's portfolio of images has also been featured

in a 16-page spread in both French and Italian *Photo* magazines, with pickups appearing in

*Panorama* magazine (Netherlands), *Stern* (Germany), *Photo District News* (US), *Mad* magazine

(France), and the 25th anniversary issue of *New Look* magazine.  Many of his iconic

photographs were also chosen to be published in the TALK/MIRAMAX coffee table book "The

National Enquirer, Thirty Years of Unforgettable Images."  Jeffery Werner is a member of the

Los Angeles Press Club and the American Society of Media Photographers, and is the president

of an editorial photo syndication agency, Incredible Features, Inc.

12.     Mr. Werner has developed a specialty in photographing stunts and stuntmen and women.  His attention to detail, even while filming dangerous stunts with his signature 15-camera remote photography set-up, has exposed him to the danger involved in getting very close to the action.  Capturing these explosive photo sequences landed him the exclusive honor of being the only still photographer inducted into The Stuntworld Hall of Fame.  Featured on a segment of "The Adventures" TV show, he was referred to as the "da Vinci of daredevil photography" (https:// helldriversmovie. wordpress.com/2008/11/10/incredible-stunts-book/). French *Photo* called him the "incredible but true photographer" and Caesar's Palace chose him as the official photographer for Robbie Knievel's jump across several fountains, an event that was covered by numerous magazines and TV outlets around the world, including *Life* and *Sports Illustrated*.  Werner's body of stunt photography is displayed in the 2009 coffee table book, *Incredible Stunts: The Chaos, Crashes and Courage of the World's Wildest Stuntmen and Daredevils*.

13.     Mr. Werner is also well-known for his work with exotic animals, celebrities in their homes, remote aboriginal peoples, sideshow eccentrics, and people who have overcome incredible obstacles.  Mr. Werner has a growing "outsider art" reputation, and his work was the subject of a retrospective gallery exhibition at the Annenberg Space for Photography in Los Angeles.  Vince Streano, photographer and President Emeritus of the American Society of Media Photographers, has said that "Jeff is the Diane Arbus of the 21st century" because he crosses social lines to celebrate his subjects.

14.     The uniqueness of Mr. Werner's portfolio, and his talent, have resulted in substantial licensing opportunities throughout the years on which he relies to research and fund

future photo shoots and to pay himself and his staff at Incredible Features, Inc.  Mr. Werner has always maintained the publishing rights to his works, knowing they would provide the revenue to produce his next story.  Mr. Werner relies on income generated from licensing his photographs for his living.  Mr. Werner employs a staff dedicated to researching new opportunities for photo shoots, as well as managing, monetizing, and policing the intellectual property of Mr. Werner's portfolio.

15.     Unfortunately, a multitude of works by Mr. Werner are now on the internet, without authorization and without compensation to Mr. Werner, as a result of intellectual property theft.  The magnitude of this theft is a baleful compliment to his talents: web pirates, who pay nothing for stolen content, can select the best.

16.     Mr. Werner's syndication company, Incredible Features, Inc., which licenses his work and owns some of the copyrights, has now been forced to incur costs to discover piracy and to help collect the revenues due to him from the tide of copyright infringements. The policing of his intellectual properties has become a cumbersome and expensive task which adds to the cost of every image produced. As in the past, despite the constant struggle against internet piracy, Werner still relies on these revenues to produce his next incredible story.

### Epoch Times, Inc., New Tang Dynasty, Inc., and Epoch Times International, Inc., Operate A Related Media Business

17.     Epoch Times, Inc. is a privately held media company publishing in print and online.  The company was founded by John Tang and a group of Chinese-American Falun Gong practitioners.

18.     *The Epoch Times* first published a print edition in New York in April 2000 in Chinese only, and the online edition began in August 2000.  In 2003, *The Epoch Times* launched an online edition in English, which began printing as a newspaper in New York in 2004.

19.     Epoch Times International, Inc. is a privately held media company publishing online and broadcasting its original and syndicated programming.  The company's Chief Executive Officer is John Tang.

20.     Epoch Times International, Inc. owns and operates DKN.tv or "Epoch Times Vietnam."

21.     Epoch Times International, Inc. claims that DKN.tv ranks as the third most popular website in Vietnam.

22.     New Tang Dynasty, Inc. is a privately held media company publishing online and broadcasting its original and syndicated programming.  The company was founded by John Tang and a group of Chinese-American Falun Gong practitioners.

23.     NTD.tv began broadcasting in New York in 2001.   NTD.tv began broadcasting via satellite in North America in February 2002, and expanded its audience into mainland China in April 2004. At present, the station's satellite coverage reaches Asia, Europe, and Australia in several languages.  On information and belief, the station's broadcasts reach 200 million viewers globally.

24.     NTD.tv operates a website at the URL www.ntd.tv.

25.     On information and belief, the defendants are all related entities doing business in New York under the fictitious name "Epoch Media Group."  *See* Exhibit "1".

**Epoch Times Infringed Mr. Werner's Copyright In The Mr. Stubbs Images**

26.     Mr. Werner is the author of a series of photographs taken on March 6, 2013, depicting "Mr. Stubbs," an alligator fitted with a prosthetic tail.  The images were registered with the United States Copyright Office on March 13, 2013 as registration number VA 1-861-824. *See* the "Stubbs Protected Work" at Exhibit "2."

27.     The Protected Work was first published under license in *The Daily Mail* on March 10, 2013.  *See* Exhibit "3."

28.     *The Epoch Times* published two unlicensed images taken from the Protected Work on its website on March 11, 2013, the day following the first licensed publication.  *See* the "Epoch Times Stubbs  Accused Work" at Exhibit "4."

29.     The original copyright management information inscribed on the licensed images published in the *Daily Mail* and other publications was reproduced in the Epoch Times Stubbs Accused Work.   Accordingly, *The Epoch Times* knew it was infringing the author's copyright.

30.     Mr. Werner's licensing agent discovered the Epoch Times Stubbs Accused Work on or about April 8, 2016.

22.     The Epoch Times Stubbs Accused Work was still actively displayed on the Epochtimes.com website on June 1, 2018 with continually-updated advertisements and links to other content from which Epoch Times, Inc. continuously earned revenue.

23.     The infringing images from the Epoch Times Stubbs Accused Work were copied to and resided on Epoch Times, Inc.'s servers.  *See*  images from Epoch Times Stubbs Accused Work stored on Epoch Times's server at Exhibit "5."

24.     Neither Mr. Werner nor his licensing agent, Incredible Features, ever granted Epoch Times, Inc. any license to copy, display, or to use the Stubbs Protected Works.

### *The Epoch Times* Infringed Mr. Werner's Copyright In The Giant George Images

25.     On or about November, 2009, Mr. Werner conducted a photo shoot of Giant George, a Great Dane who at the time was being discussed as a contender for the title of "World's Tallest Dog," bestowed by the Guinness Book of World Records.  Mr. Werner and his staff researched, contacted and negotiated the terms of the photo shoot with Giant George's

owner, and traveled to Tucson, Arizona, for the photo shoot all at Incredible Features' expense.

26.     The photo shoot resulted in a collection of photographs featuring Giant George registered by Mr. Werner with the U.S. Copyright Office, Registration No. VAu 1-005-177, effective as of November 11, 2009.  *See* "Giant George Protected Work (Photos)" at Exhibit "6."

27.     Mr. Werner licensed the Giant George photographs and video to such media outlets as *The Daily Mail*, *The Oprah Show*, *Maxim Magazine*, *National Geographic Reader*, *In Touch Weekly*, the *National Examiner, QUO Magazine* in Spain, and *30 Millions d'Amis*, Europe's premier animal magazine.  On or about late January or early February, 2010, Giant George was declared by the Guinness Book of World Records to be the world's tallest dog. That designation resulted in renewed interest in Mr. Werner's Giant George Protected Works, and created further licensing opportunities for him.  His company made ten syndication sales of the Giant George works in February 2010.

28.     On February 23, 2010 *The Epoch Times* published a feature that copied two of Mr. Werner's images from the Giant George Protected Works.  *See* the "Giant George Accused Work" at Exhibit "7."

29.     Mr. Werner's licensing agent discovered the Giant George Accused Work on or about April 8, 2016.

30.     The Giant George Protected Works were still actively displayed on the Epochtimes.com website in both English and Chinese on June 1, 2018 with continually-updated advertisements and links to other content from which Epoch Times, Inc. continuously earned revenue.

31.     The infringing images from the Giant George Accused Work were copied to and

reside on Epoch Times's server.  *See* server copy of Werner's Giant George Accused Work at Exhibit "8."

32.     Neither Mr. Werner nor his licensing agent, Incredible Features, Inc., ever granted Epoch Times, Inc. any license to copy, display, or to use the Giant George Protected Work.

### *The Epoch Times* Infringed Mr. Werner's Copyright In The Stacy Herald Images

33.     On October 13, 2009 Mr. Werner created a photo feature recording the preparation for child birth of Stacy Herald, an extremely small woman who successfully gave birth to three children despite medical warnings against pregnancy.   Those works were part of an extended project in which Mr. Werner produced features recording the Herald family's preparation for the birth of her third child, her delivery, and subsequent family life.

34.     Mr. Werner registered his images of Ms. Herald's pregnancy with the Copyright Office on October 29, 2009 as VAu 1-012-243.   *See* Herald First Protected Work at Exhibit "9".

35.     Mr. Werner's Stacy Herald photos generated interest.  The images were licensed to magazines, newspapers and/or TV outlets around the world, including the *The Daily Mail, The Sun, Maury Povich Show, Inside Edition, AOL Living,* and *E! Entertainment Living.*  On November 9, 2009, the Herald Protected Work appeared in the *The Daily Mail*. *See* Exhibit 10.

36.     On November 11, 2009 *The Epoch Times* published an article that copied four images from the Herald First Protected Works.  *See* the "Epoch Times Herald First Accused Work" at Exhibit "11."

37.     The original copyright management information inscribed on the published images in the Herald First Protected Work was reproduced in the Epoch Times Herald First Accused Work.   Accordingly, *The Epoch Times* knew it was infringing the author's copyright.

38.    Mr. Werner's licensing agent discovered the Epoch Times Herald First Accused Work on or about April 8, 2016.

39.    The Epoch Times Herald First Accused Work was still actively displayed on the Epochtimes.com website on June 1, 2018 with continually-updated advertisements and links to other content from which Epoch Times, Inc. continuously earned revenue.

40.    The infringing images from the Epoch Times Herald First Accused Work were copied to and reside on Epoch Times's server.  *See* server copy of the Herald First Accused Work at Exhibit "12."

41.    On or about December, 2009 Mr. Werner created a photo feature recording the delivery of Stacy Herald's child in a hospital.

42.    Incredible Features registered its images of Mrs. Herald with the Copyright Office on December 21, 2009 as VAu 1-009-696.  *See* the "Herald Second Protected Work" at Exhibit "13."

43.    Images from the December 2009 Second Herald Protected Works photos were published on December 8, 2009 in the *The Daily Mail*. *See* Exhibit "14."

44.    The following day, on December 9, 2009, *The Epoch Times* published an article that copied two images from the Herald Second Protected Work.  *See* the "Epoch Times Herald Second Accused Work" at Exhibit "15."

45.    The original copyright management information inscribed on the published images in the Herald Second Protected Work was reproduced in the epoch Times Herald Second Accused Work.   Accordingly, *The Epoch Times* knew it was infringing the author's copyright.

46.    Mr. Werner's licensing agent discovered the Epoch Times Herald Second Accused Work on or about April 8, 2016.

47.     The Epoch Times Herald Second Accused Work was still actively displayed on the Epochtimes.com website on June 1, 2018 with continually-updated advertisements and links to other content from which Epoch Times, Inc. continuously earned revenue.

48.     The infringing images from the Epoch Times Herald Second Accused Work were copied to and reside on Epoch Times's server.  *See* server copy of the Herald Second Accused Work at Exhibit "16."

49.     Neither Mr. Werner nor his licensing agent, Incredible Features, Inc., ever granted *The Epoch Times* any license to copy the Herald First or Second Protected Works.

**Systematic Piracy Destroys The Value Of Content Creators' Work**

50.     Mr. Werner conducts business as a syndicator of photo features through his company, Incredible Features, Inc.  The syndication business model is predicated on licensing the use of work in multiple outlets each of which pays a fee to publish.  No single fee can compensate him for his work.  The business plan of syndicators depends on multiple sales in the weeks after a feature is released for publication, with sporadic licensing thereafter of human interest features with long shelf lifes.

51.     Actors in the media industries know that repeated, almost instantaneous acts of content piracy destroy the syndication value of the work of content creators like Mr. Werner.

52.     Here Mr. Werner's Mr. Stubbs Protected Work images were stolen by *The Epoch Times* the very next day after they were published by *The Daily Mail.*  In February, 2010, when Incredible Features experienced a marked increase in sales due to Giant George being named the largest dog in the world by the Guinness Book of World Records, *The Epoch Times* published infringing copies of the work.  *The Epoch Times* published infringing copies of the Herald First Protected Works two days after they were first published by *The Daily Mail*.  It published

pirated copies of the he Herald Second Protected Work one day after the initial licensed publication.

53.     *The Epoch Times's* almost instantaneous theft of Mr. Werner's work illustrates the process whereby commercial piracy of content not only deprives the owner of license fees but also destroys the syndication value of the work.  Legitimate publications to which Mr. Werner looks to pay syndication fees are unwilling to pay for work that is already widely disseminated on the internet for free by pirate sites.

### New Tang Dynasty Infringed Mr. Werner's Copyright In The Giant George Images

54.     On or about November, 2009, Mr. Werner conducted a photo and video shoot of Giant George, referenced above at paragraph 26.

55.     The photo shoot resulted in a collection of photographs featuring Giant George registered by Mr. Werner with the U.S. Copyright Office, Registration No. VAu 1-005-177, effective as of November 11, 2009.  *See* "Giant George Protected Work (Photos)" at Exhibit "6."

56.     Mr. Werner licensed the Giant George Protected Works to media outlets as stated in paragraph 27 above.

57.     On October 13, 2017 NTD.tv published on its website a feature titled: "He Needed a Queen-sized Bed of His Own: Meet George, The World's Biggest Dog Ever" that copied one image from the Giant George Protected Works.  *See* the "NTD.tv Giant George Accused Work" at Exhibit "17."

58.     The Giant George Protected Works were still actively displayed on the NTD.tv website on June 1, 2018 with continually-updated advertisements and links to other content from which New Tang Dynasty, Inc. continuously earned revenue.

59.     The infringing images from the Giant George Protected Works were copied to and resided on New Tang Dynasty, Inc.'s server in both its original and modified form.  *See* server copy of the NTD.tv Giant George Accused Work at Exhibit "18".

60.     Neither Mr. Werner nor his licensing agent, Incredible Features, Inc., ever granted New Tang Dynasty, Inc., any license to copy, display, or to use the Giant George Protected Work.

### New Tang Dynasty Infringed Mr. Werner's Copyright In The Stacy Herald Images

61.     On October 13, 2009 Mr. Werner created a photo feature recording the pregnancy and preparation for child birth of Stacy Herald as stated above in paragraph 33.

62.     Mr. Werner registered his images of Ms. Herald with the Copyright Office on October 29, 2009 as VAu 1-012-243.   *See* Herald First Protected Work at Exhibit "9."

63.     On or about the spring of 2010 Mr. Werner created a third photo feature recording the home life of Stacy Herald's family after the delivery of her third child.

64.     Mr. Werner registered his images of Mrs. Herald with the Copyright Office on June 7, 2010 as VAu 1-028-944.  *See* Herald Third Protected Work" at Exhibit "19."

65.     On July 5, 2017 NTD.tv published on its website a feature titled "World's smallest mom's pregnancy could crush her lungs and heart, but now a proud mom of 3" that copied seven images from the Herald First and Third Protected Works.  See the "NTD.tv Herald First Accused Work" at Exhibit "20."

66.     The NTD.tv Herald First Accused Work was still actively displayed on the NTD.tv website on June 1, 2018 with continually-updated advertisements and links to other content from which New Tang Dynasty, Inc. continuously earned revenue.

67.     On July 7, 2017 NTD.tv published on its Chinese language website a feature the

headline of which translates roughly as "The Smallest Mother In The World" that copied the same seven images from the Herald First and Third Protected Works.  See the "NTD.tv Herald Second Accused Work" at Exhibit "21."

68.    The NTD.tv Herald First and Second Accused Works were still actively displayed on the NTD.tv website on June 1, 2018 with continually-updated advertisements and links to other content from which New Tang Dynasty, Inc. continuously earned revenue.

69.    The infringing images from the NTD.tv Herald First and Second Accused Works were copied to and resided on NTD.tv's server.  *See* server copy of the NTD.tv Herald Accused Work at Exhibit "22."  Both accused works stored their images at the same server address.

70.    Neither Mr. Werner nor his licensing agent, Incredible Features, Inc., ever granted New Tang Dynasty, Inc. any license to copy the Herald Protected Work.

### Epoch Times International Infringed Mr. Werner's And IFI's Copyrights In The Stacy Herald Images

71.    Mr. Werner created three photo features based on Stacy Herald and registered his copyrights in the images as set forth above at paragraphs 33, 34, 41, 42, 63, and 64.

72.    On October 10, 2016 DKN.tv published on its website a feature article the headline of which roughly translates as "Husband 1.75 meters tall married 0.71 meter wife: 'She is the greatest happiness of my life.' " *See* the "DKN.tv Herald First Accused Work" at Exhibit "23."

73.    That article copied seven (7) images from the Herald First Protected Work and one (1) image from the Herald Second Protected Work.

74.    The DKN.tv Herald First Accused Work was still actively displayed on the DKN.tv website on June 1, 2018 with continually-updated advertisements and links to other content from which Epoch Times International, Inc. continuously earned revenue.

75.     The images from the Herald First Accused Work were copied to and resided on Epoch Times International, Inc.'s server.  *See* server copy of the DKN.tv Herald Accused Work at Exhibit "24."

76.     On September 3, 2017 DKN.tv published on its website a feature the headline of which roughly translates as "10 mothers with strange birth stories."  The first of 10 stories was about Stacy Herald.  It copied one image from the Herald Third Protected Work.  *See* the "DKN.tv Herald Second Accused Work" at Exhibit "25."

77.     The DKN.tv Herald Second Accused Work was still actively displayed on the DKN.tv website on June 1, 2018 with continually-updated advertisements and links to other content from which Epoch Times International, Inc. continuously earned revenue.

78.     The infringing image from the DKN.tv Herald Second Accused Work was copied to and resided on Epoch Times International, Inc.'s server.  *See* server copy of the DKN.tv Herald Second Accused Work at Exhibit "26."

79.     Neither Mr. Werner nor his licensing agent, Incredible Features, Inc., ever granted Epoch Times International, Inc. any license to copy the Herald Protected Work.

### Epoch Times International Infringed Mr. Werner's And IFI's Copyrights In The Family Coyote Images

80.     On or about June, 2013, Mr. Werner created a photo feature about a family that reared a pet coyote.

81.     Mr. Werner registered his work with the Copyright Office on December 17, 2013 as VAu 1-920-166 (the "Family Coyote Protected Work").  *See* certificate and relevant deposits at Exhibit "27."

82.     Werner's Family Coyote photos were licensed to magazines, newspapers and/or TV outlets around the world, including *Daily Mail* and *Daily Record*.

83.     On June 27, 2017, DKN.tv published on its website a feature the headline of which roughly translates as "The girl was glad when she brought back a cute puppy, but the bigger she got the more unusual she appeared."  That feature published copies of 12 images from Family Coyote Protected Work.  In addition, DKN.tv committed a further infringement by creating a video derivative work based on the Family Coyote Protected Work.  *See* the DKN.tv Family Coyote Accused Work at Exhibit "28."

84.     The original copyright management information inscribed on the published images in the Family Coyote Protected Work was reproduced in the DKN.tv Family Coyote First Accused Work.   Accordingly, Epoch Times International knew it was infringing the author's copyright.

85.     The DKN.tv Family Coyote Accused Work was still displayed on the DKN.tv website on June 1, 2018 with continually-updated advertisements from which Epoch Times International, Inc. continuously earned revenue.

86.     The infringing images from the DKN.tv Family Coyote Accused Work were copied to and resided on NTD.tv's server.  *See* server copy of the NTD.tv Family Coyote Accused Work at Exhibit "29."

87.     Neither Mr. Werner nor his licensing agent, Incredible Features, Inc., ever granted Epoch Times International, Inc. any license to copy the Family Coyote Protected Work.

### COUNT I

**Against All Defendants**
**(Copyright Infringement, 17 U.S.C. § 501)**

88.     Plaintiffs incorporate the allegations contained in paragraphs 1-87.

89.     Plaintiffs are the authors and/or copyright owners of the Protected Works.

90.     Defendants have reproduced, displayed, distributed or otherwise copied the

Protected Works without Plaintiffs' license or authorization.

91.     The actions and conduct of Defendants, as described above, infringed upon the exclusive rights granted to photographers under 17 U.S.C.A. 106 to display, reproduce and distribute their work to the public.  Such actions and conduct constitute copyright infringement under the Copyright Act of 1976, 17 U.S.C.A. 501.

92.     Plaintiffs have complied in all respects with 17 U.S.C. §§ 101 et seq., and secured and registered the exclusive rights and privileges in and to the copyrights of the above-referenced works pursuant to 17 U.S.C. § 408.

93.     Having timely registered their copyright in the Protected Works, Plaintiffs are entitled to elect statutory damages under 17 USC § 412 and § 504(c), in an amount of not less than $750 or more than $30,000 per infringement of each work registered prior to Defendants' Infringements.

94.     Plaintiffs allege, on information and belief, that Defendants operated their businesses by routinely exploiting photographic images without payment to, and without obtaining licenses from, copyright owners.  Such commercial piracy by publishers in an industry in which copyrights are prevalent and well-understood will support an award of enhanced statutory damages for willful infringement under Section 504(c)(2) of the Copyright Act in the sum of up to ($150,000.00) per infringed work.

95.     In the alternative, Plaintiffs are entitled to elect recovery of its actual damages and Defendants' profits attributable to the infringement of the Protected Work, pursuant to 17 U.S.C. 504(b).

96.     Within the time permitted by law, Plaintiffs will make its election between actual damages and profit disgorgement, or statutory damages.

97.     Prior registration also entitles Plaintiffs to seek an award of attorney's fees pursuant to 17 USC § 412 and § 505.

## COUNT II

**Against All Defendants**
**(Vicarious And/Or Contributory Copyright Infringement)**

98.     Plaintiffs incorporate by reference all the allegations of paragraphs 1 through 97.

99.     If Defendants are not liable as direct infringers of the Protected Works, they are secondarily liable for the infringements directly committed by individual employee or contractor infringers presently unknown (the "Direct Infringers").

100.     Defendants contributed to, induced, or assisted infringements by the Direct Infringers.  Those Direct Infringers infringed while acting under their principal's direction and control using technology, facilities, and support services provided by Defendants.

101.     Defendants had, or should have had, knowledge of the infringements of the Direct Infringers who were their contributors.  Further, their Accused Works were published on Defendants' websites and they were, or should have been, aware of that fact.  As the owner of their respective websites, Defendants knew, or should have known, that they did not have licenses to use Plaintiffs' images in the Accused Works.  Indeed, most of the accused works contained Plaintiffs' copyright notices.

102.     Defendants had the right and ability to supervise the infringing activity that all the Direct Infringers committed because the infringements occurred on Defendants' website and programs.

103.     Defendants obtained some financial benefit from the infringement of Plaintiffs' rights in the Protected Works because they published advertisements and links to other content on the Accused Works and because they were a draw for viewers regardless of the revenue

received from advertising.  Accordingly, they had an incentive to permit infringement by the direct infringers.

104.    As a direct and proximate result of said acts of secondary infringement, Plaintiffs have suffered substantial damages in an amount to be proven at trial.

105.    Plaintiffs are entitled to actual damages and disgorgement of direct and indirect profits realized by Defendants in an amount to be proven at trial or, at his election, statutory damages.

106.    Within the time permitted by law, Plaintiffs will make his election between actual damages and profit disgorgement, or statutory damages, depending upon which is larger.

107.    Plaintiffs are further entitled to its attorneys' fees and costs pursuant to 17 U.S.C. § 505.

## **RELIEF**

WHEREFORE, Plaintiffs request judgment against Epoch Times, Inc., Epoch Times International, Inc., and New Tang Dynasty, Inc. for:

1.    A finding that Defendants infringed Plaintiffs' copyright interests in the Protected Works by copying and displaying it and for using it to create derivative works for commercial purposes without any license or consent;

2.    An award of actual damages and disgorgement of all of Defendants' profits attributable to the infringement, as provided by 17 U.S.C. §504, in an amount to be proven at trial or, in the alternative, at Plaintiffs' election, statutory damages for willful infringement pursuant to 17 U.S.C. §504(c)(1) or (2), whichever is larger;

3.    An order, pursuant to 17 U.S.C.  502(a), enjoining Defendants from any infringing use of any of Plaintiffs' works;

4.      An order, pursuant to 17 U.S.C. §§ 502 and 503, impounding or enjoining Defendants to turn over to Plaintiffs all copies of the Protected Works made or used in violation of the exclusive right of the copyright owner; all plates, tapes, film negatives, or other articles by means of which such copies may be reproduced; and records documenting the manufacture, sale, or receipt of things involved in any such violation.

5.      An award of Plaintiffs' attorney's fees and costs pursuant to 17 U.S.C. §505.

6.      An award of Plaintiffs' attorney's fees and costs pursuant to 17 U.S.C. §1203;

9.      Pretrial interest as permitted by law; and

10.     Such other relief as the Court deems just and proper.

### DEMAND FOR JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiffs demand trial by jury in this action of all issues so triable.

Respectfully submitted,
**SPECTOR GADON & ROSEN, P.C.**

By: */s/ Bruce Bellingham*
    Bruce Bellingham, Esquire
    David B. Picker, Esquire
    1635 Market Street, 7th Floor
    Philadelphia, PA 19103
    (215) 241-8916
    *dpicker@lawsgr.com*
    *bbellingham@lawsgr.com*

July 5, 2018                    *Attorneys for Plaintiff*